IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

                                :
SHEILA JOHANSSON
                                :

    v.                          :   Civil Action No. DKC 13-2171

                                :

PRINCE GEORGE'S COUNTY PUBLIC
SCHOOLS, et al.                 :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this disability discrimination case are the motions to dismiss filed by Defendant Prince George's County Public Schools ("PGCPS") (ECF No. 22), and Defendant Prince George's County Educators' Association (ECF No. 24).   The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6.   For the following reasons, the motions to dismiss will be granted in part and denied in part.

**I.   Background**

The following facts are set forth in the amended complaint. (ECF No. 21).   Plaintiff was hired by PGCPS in 1993 as a Resource Teacher.   She was employed by PGCPS through December 2012.[1]   In 1996 she became a Crisis Intervention Resource

---

[1] The various filings are not clear as to when Plaintiff considers to be her last day with PGCPS.  Her amended complaint lists her constructive discharge as October 12, 2012.  (ECF No. 21 ¶ 9).   She then states that a letter from the state retirement board dated October 18, 2012 informed her that she

Specialist in PGCPS's Crisis and Intervention Program.  Her job was to provide conflict resolution services to students.  This duty occasionally required her to restrain students physically.  Starting in the first year of her PGCPS employment, she has continuously paid dues to PGCEA, a private non-profit corporation that serves as the union for teachers in PGCPS.

On October 1, 2010, Plaintiff collided with another teacher and fell on her knee, suffering a knee injury that resulted in a period of temporary total disability.  On January 3, 2011, Plaintiff began part-time sedentary duty and returned to full duty work on February 7, 2011.  Despite returning to full duty work, Plaintiff still suffered pain and discomfort in her knee as well as limitations on the strength of her leg and her mobility.  She remained capable of restraining only smaller students; larger students would require assistance.  As an accommodation, PGCPS provided Plaintiff an intervention partner to assist her with large children or with children she could not handle because of her knee issues.

On November 7, 2011, Plaintiff was told to intervene with a large child whom Plaintiff could not handle on her own.  Her intervention partner was unavailable as she was in another area

---

has 120 days to elect disability retirement.  (*Id.* ¶ 35).  Her EEOC charging form and opposition to Defendants' motion to dismiss list her retirement as December 2012.  (ECF No. 10-5; ECF No. 26, at 14).

of the school on another intervention. Brenda Hawkins, Plaintiff's supervisor, insisted that Plaintiff become physically involved with the large child. Plaintiff states that Ms. Hawkins knew she needed assistance to intervene. Ms. Hawkins informed Plaintiff that she should not be at work if she is unable to "do her job."

Plaintiff saw her doctor immediately after this incident and was told that she was no longer physically capable of restraining large students without assistance. The doctor completed the "Medical Inquiry Form to Support Accommodation." On November 18, 2011, Plaintiff submitted form A.P. 4172 seeking a reasonable accommodation from PGCPS for her continuing disability. According to Plaintiff, PGCPS never responded to this request. Plaintiff discussed her options with Ms. Wende Flagler, PGCPS's retirement counselor. Ms. Flagler could not offer any alternatives or solutions to Plaintiff.

On December 16, 2011, Plaintiff contacted Jamal Miller, her PGCEA union representative, in order to obtain information about a possible workplace accommodation or alternative job arrangements. Plaintiff repeatedly spoke with Mr. Miller about this issue. Plaintiff sent an email as recently as November 12, 2012, requesting that Mr. Miller inquire about a workplace accommodation for Plaintiff. According to Plaintiff, Mr. Miller told her multiple times that it was the position of PGCEA that

PGCPS was not required to accommodate her disability and that she should plan on retiring.

Sometime in August 2012, Ms. Gail Bentz, the principal of Plaintiff's school, expressed surprise that PGCPS would not accommodate Plaintiff and informed her that there was nothing she could do to assist Plaintiff directly.  Plaintiff alleges that PGCPS did not attempt to reassign Plaintiff although they hired resource specialists to perform the same functions as Plaintiff without requiring the specialist physically to restrain students.  In the last two years, at least three such positions have been posted by PGCPS.

Plaintiff alleges that PGCPS refused to allow Plaintiff to use all of her sick leave because her doctor had determined that she was disabled.  This denial left Plaintiff without any source of income unless she applied for disability retirement.  On October 18, 2012, the Maryland State Retirement and Pension System, having found that Plaintiff is permanently disabled, informed her that she had 120 days to retire under ordinary disability retirement or be ineligible for disability retirement benefits.  According to Plaintiff, the combination of Plaintiff's lack of income, PGCPS's utter refusal to accommodate Plaintiff, and PGCEA's failure to provide adequate representation resulted in Plaintiff's constructive discharge.

On February 28, 2013, she filed a Charge of Harassment and Discrimination with the Prince George's County Human Rights Commission, which was cross-filed with the Equal Employment Opportunity Commission ("EEOC").   On June 11, 2013, Plaintiff filed a complaint in the Circuit Court for Prince George's County, Maryland.   Defendants removed the action to this court on July 26, 2013, citing federal question jurisdiction, 28 U.S.C. § 1331.   Plaintiff filed an amended complaint on August 26, 2013.  The amended complaint contains eight counts.  Against Defendant PGCPS, Plaintiff claims common law wrongful/constructive discharge for failure to accommodate (Count I); civil conspiracy with PGCEA to deny Plaintiff a reasonable accommodation and ensure Plaintiff's only option was early retirement (Count IV); failure to accommodate and disparate treatment in violation of the Americans with Disabilities Act, 42 U.S.C. § 12111, (Count V), the Rehabilitation Act, 29 U.S.C. § 794, (Count VI), and their state and county analogs, Md. Code Ann., State Gov't § 20-1001, (Count VII), and Prince George's Cnty. Code § 2-185, (Count VIII).[2] Against Defendant PGCEA, Plaintiff claims breach of contract for failure to advise adequately and represent Plaintiff (Count II);

---

[2] Plaintiff's complaint contains two "Count VI": violation of the Rehabilitation Act, and violation of the Maryland analog. Violation of the state law will be renumbered the Count VII, and the last count of the complaint – violation of the Prince George's County Code – will be renumbered as Count VIII.

negligent misrepresentation (Count III); and civil conspiracy (Count IV). PGCPS filed a motion to dismiss for failure to state a claim and lack of subject-matter jurisdiction on September 12, 2013. (ECF No. 22). PGCEA filed a motion to dismiss for failure to state a claim on September 13, 2013. (ECF No. 24). Plaintiff opposed both motions on September 30, 2013 (ECF No. 26), and PGCPS replied on October 17, 2013 (ECF No. 17).

## II.  Standard of Review

The arguments raised by Defendants in their motions to dismiss – lack of subject matter jurisdiction and failure to state a claim – implicate different standards of review. First, "a failure by the plaintiff to exhaust administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim." *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300-01 (4th Cir. 2009). A motion to dismiss for lack of subject matter jurisdiction is governed by Federal Rule of Civil Procedure 12(b)(1). Generally, "questions of subject matter jurisdiction must be decided 'first, because they concern the court's very power to hear the case.'" *Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 442 n.4 (4th Cir. 1999) (*quoting* 2 James Wm. Moore, et al., Moore's Federal Practice § 12.30[1] (3d ed. 1998)). The Plaintiff always bears the burden of proving that subject matter jurisdiction properly exists in

federal court.  *See Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999).  In considering a Rule 12(b)(1) motion, the court "may consider evidence outside the pleadings" to help determine whether it has jurisdiction over the case before it.  *Richmond, Fredericksburg & Potomac R.R. Co. v. United States,* 945 F.2d 765, 768 (4th Cir. 1991); *see also Evans,* 166 F.3d at 647.  The court should grant such a motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond,* 945 F.2d at 768.

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).  A plaintiff's complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2).  "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007).  That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).

At this stage, all well-pleaded allegations in a complaint must be considered as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and all factual allegations must be construed in the light most favorable to the plaintiff, *see Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (*citing Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). In evaluating the complaint, unsupported legal allegations need not be accepted. *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Legal conclusions couched as factual allegations are insufficient, *Iqbal*, 556 U.S. at 678, as are conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

## III. Analysis

### A. Subject-Matter Jurisdiction: Failure to Exhaust Administratively

PGCPS argues that Plaintiff cannot bring her ADA claim (Count V) because she has not pled that she has received, or is entitled to, a right-to-sue letter from the EEOC. The procedures of the ADA are identical to those in the Title VII context. 42 U.S.C. § 12117(a). Title VII opens the door for a private citizen to bring a civil action only upon either: (1) the dismissal of the administrative action by the EEOC, or (2) after 180 days have elapsed from the filing of the

administrative claim with the EEOC.  42 U.S.C. § 2000e-5(f)(1).
Once the door opens, the plaintiff has ninety days to file a
claim.  *Id.*

Plaintiff brings discrimination claims based on federal,
state, and county law.  Each source of protection, however, has
different procedures and requirements.  While ADA claims must
wait for dismissal by the EEOC or 180 days, whichever is sooner,
claims brought under the County Code can be brought after forty-
five (45) days of filing the charge with the agency.  Md. Code
Ann., State Gov't § 20-1202(c)(2).  Plaintiff filed a charge
with the EEOC on February 28, 2013.  Her original complaint was
filed on June 11, 2013.  She alleges that on July 17, 2013, she
"received notice that her Charge of Harassment had been
administratively closed, because of her filing of her
complaint."  (ECF No. 21 ¶ 47).  Plaintiff filed her amended
complaint on August 28, 2013.

Plaintiff clearly exhausted administratively her county
claims, but there is no indication that she received a "right to
sue" letter from the EEOC at the time of filing her original
complaint.  *Davis v. N.C. Dep't of Corr.*, 48 F.3d 134, 140 (4th
Cir. 1995) ("We have long held that receipt of, or at least
entitlement to, a right-to-sue letter is a jurisdictional
prerequisite that must be alleged in a plaintiff's complaint.").
While one court in this district has declined to read *Davis*'s

pleading language as its holding, *Barkhorn v. Ports Am. Chesapeake, LLC*, No. JKB-10-750, 2011 WL 4479694, at *2-3 (D.Md. Sept. 26, 2011), a court must still satisfy itself that all jurisdictional prerequisites are met, such as attaching the right-to-sue letter to a filing or pleading the date of receipt. *Id.* In her amended complaint, Plaintiff writes that on July 17, 2013, she "received notice that her Charge of Harassment had been administratively closed, because of her filing of her complaint." (ECF No. 21 ¶ 47). As other courts in this district have recognized, the later issuance of a right to sue letter, coupled with the filing of an amended complaint cures any procedural defect. *Miller v. Balt. Gas & Elec. Co.*, 202 F.R.D. 195, 204 (D.Md. 2001) (*citing Henderson v. E. Freight Ways, Inc.*, 460 F.2d 258, 260 (4th Cir. 1972)). Count V of the original complaint was subject to dismissal prior to the filing of the amended complaint, but "the issuance of the 'suit-letter' validated the pending action." *Henderson*, 460 F.2d at 260.[3]

---

[3] Plaintiff's right-to-sue letter was issued fewer than 180 days from the filing of her administrative charge. The EEOC has issued a regulation that allows it "to issue a right to sue letter at any time prior to the expiration of 180 days from the date of filing the charge with the Commission; provided that [an appropriate Commission official] has determined that it is probable that the Commission will be unable to complete its administrative processing of the charge within 180 days from the filing of the charge." *Miller*, 202 F.R.D. at 205 (*citing* 29 C.F.R. § 1601.28(a)(2)). There is a circuit split on this issue, with the United States Court of Appeals for the District of Columbia Circuit finding the regulation invalid and requiring

## B.    Timeliness of Plaintiff's Claims[4]

PGCPS contends that Plaintiff's claim of failure to accommodate pursuant to the ADA is untimely.  The ADA – using the procedures of Title VII - requires a plaintiff to file an EEOC charge within a prescribed limitations period.  42 U.S.C. § 2000e-5(e)(1).  In deferral states such as Maryland, that limitations period is 300 days from the date of the allegedly

---

complainants to wait 180 days after filing charges with the EEOC.  *Martini v. Fed. Nat'l Mortg. Ass'n*, 178 F.3d 1336, 1347 (D.C. Cir. 1999).  The United States Courts of Appeals for the Ninth, Tenth, and Eleventh Circuits have held that the regulation is a valid exercise of the EEOC's authority.  *See Walker v. United Parcel Serv., Inc.*, 240 F.3d 1268, 1273–77 (10th Cir. 2001); *Sims v. Trus Joist MacMillan,* 22 F.3d 1059, 1061–63 (11th Cir. 1994); *Brown v. Puget Sound Elec. Apprenticeship & Training Trust,* 732 F.2d 726, 729 (9th Cir. 1984).  The Fourth Circuit has not addressed the issue, but three judges in this district have upheld the regulation.  *See Carson v. Giant Food, Inc.*, 187 F.Supp.2d 462, 472 (D.Md. 2002); *Miller*, 202 F.R.D. at 206; *Thomas v. Bet Sound-Stage Restaurant/BrettCo, Inc.*, 61 F.Supp.2d 448, 459 (D.Md. 1999).  *But see Loney v. Carr-Lowrey Glass Co.*, 458 F.Supp. 1080, 1081 (D.Md. 1978).  The trio of decisions by this court are persuasive and Plaintiff's ADA claim is not premature.

[4] Because "a failure to exhaust administrative remedies based on untimely filings is not an issue of subject matter jurisdiction," dismissal under Rule 12(b)(1) would be improper. *Brown v. McKesson Bioservices Corp.*, No. DKC 05-0730, 2006 WL 616021, at *3 (D.Md. Mar. 10, 2006); *see also Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982) (holding that the requirement that a plaintiff timely exhaust administrative remedies is a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling").  Consequently, these arguments will be considered under the 12(b)(6) standard.

discriminatory act. *Id.*[5] "Courts strictly adhere to these time limits and rarely allow equitable tolling of limitations periods." *Khoury v. Meserve*, 268 F.Supp.2d 600, 606 (D.Md. 2003), *aff'd*, 85 F.App'x 960 (4th Cir. 2004).

Plaintiff's charge was filed on February 28, 2013, meaning that only those acts that allegedly violate the ADA which occurred within 300 days of that date are timely filed. PGCPS argues that Plaintiff was out of work between November 2011 and her retirement in December 2012, during which period she made continuous applications for paid leave. As she was not able to work at any time within the statute of limitations, she could not possibly be accommodated during this time period. Accordingly, there could be no failure to accommodate within the limitations period.

Plaintiff attempts to use the "continuing violation" theory, which "allows for consideration of incidents that occurred outside the time bar when those incidents are part of a single, ongoing pattern of discrimination." *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007) (*citing Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 118 (2002)). Such a theory only applies, however, when an employee asserts a hostile

---

[5] A "deferral state" is one that has its own state or local agency with authority to grant or seek relief from employment discrimination or to institute criminal proceedings on behalf of the alleged victim. 42 U.S.C. § 2000e-5(e)(1).

work environment claim. *Id.; see also Szedlock v. Tenet*, 61 F.App'x 88, 93 (4th Cir. 2003) ("The Supreme Court's ruling in [*Morgan*], however, makes clear that unless the plaintiff alleges a hostile work environment [claim] . . . each instance of discrimination is a discrete act."). Plaintiff cites no authority discussing the continuing violation doctrine in the context of a failure to accommodate. Courts that have analyzed the doctrine in connection with failure to accommodate claims have concluded that the doctrine does not apply. *See Teague v. Northwestern Mem'l Hosp.*, 492 F.App'x 680, 684 (7th Cir. 2012); *Tobin v. Liberty Mut. Ins. Co.*, 553 F.3d 121, 130-31 (1st Cir. 2009); *Mayers v. Laborers' Health & Safety Fund of N. Am.*, 478 F.3d 364, 368 (D.C. Cir. 2007); *Marshall v. Donahoe*, No. DKC 12-0431, 2013 WL 597596, at *4 (D.Md. Feb. 15, 2013); *Taylor v. Fed. Express Corp.*, No. RDB-03-195, 2004 WL 5231978, at *9 (D.Md. July 28, 2004). Consequently, a plaintiff may only proceed and recover on deliberate discrimination that occurred within the limitations period, *Lewis v. City of Chicago, Ill.*, 560 U.S. 205, 214-15 (2010), although she is not barred from using prior acts as background evidence in support of a timely claim, *Morgan*, 536 U.S. at 113. Therefore, only those acts that occurred between May 4, 2012 and February 28, 2013 are actionable as a failure to accommodate claim under the ADA.[6]

---

[6] In addition, Plaintiff brings identical claims under the

Plaintiff acknowledges that her last day at work was November 7, 2011, but she remained an employee until December 2012. During that period of time, however, she attempted to get her job back or obtain approval for disability retirement benefits. She appealed to Ms. Bentz in August 2012. This conversation could constitute a failure to accommodate that falls within the 300 day period necessary for the ADA.[7]

PGCPS also argues that Plaintiff's failure to accommodate claim is not timely under the County Code, which requires a complaint to be filed with the County's Human Rights Commission no later than 180 days after the date of the alleged violation.

---

Rehabilitation Act. The Rehabilitation Act – unlike the ADA – has no administrative exhaustion requirement. It also does not specify a limitation period. Because of this, courts "borrow" the most appropriate or analogous state statute of limitations and apply it to the federal cause of action. *See A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 347 (4th Cir. 2011). "Maryland courts apply the three-year limitations period governing general civil actions to ADA and Rehabilitation Act claims." *Jeandron v. Bd. of Regents of Univ. Sys. of Md.*, 510 F.App'x 223, 226 (4th Cir. 2013) (citations omitted); *see also Schalk v. Associated Anesthesiology Practice*, 316 F.Supp.2d 244, 251 (D.Md. 2004) (holding that "the statute of limitations for Rehabilitation Act claims in Maryland is three years"). All of PGCPS's alleged acts of failure to accommodate fall within this limitations period. An additional difference between the Rehabilitation Act and the ADA is that the Rehabilitation Act only applies to the federal government or entities that receive federal funding. 29 U.S.C. § 794(a). Plaintiff has alleged that PGCPS receives federal funding (ECF No. 21 ¶ 87), and PGCPS does not argue otherwise in its motion.

[7] As will be discussed below, receiving notice of the deadline to file for disability from the state retirement board is not an act by PGCPS of failure to accommodate.

Prince George's Cnty. Code § 2-201.   180 days prior to February 28, 2013 is September 1, 2012.   Consequently, Plaintiff cannot rely on her conversation with Ms. Bentz to support a failure to accommodate claim because it is untimely under the County Code, as Plaintiff represents that the conversation occurred in August 2012.   Plaintiff's only other allegation of an alleged failure to accommodate that occurred during this period of time was the October 2012 notice from the Maryland State Retirement and Pension System informing her that she had 120 days to apply for ordinary disability retirement.   (ECF No. 21 ¶ 35).   But the state retirement board was not Plaintiff's employer and there is no allegation that PGCPS played any role in the retirement board's decision that would fall within the time period. Consequently, Plaintiff has stated no timely claim under the County Code for failure to accommodate.

PGCPS's final timeliness argument concerns Count VII: violation of Maryland's Fair Employment Practices Act ("MFEPA"). The law permits a litigant to bring a civil action if: (1) she files a timely administrative charge; (2) at least 180 days have elapsed since the filing of the administrative charge; and (3) the civil action is filed within 2 years after the alleged unlawful employment practice occurred.   Md. Code Ann., State Gov't § 20-1013(a).   PGCPS contends that Plaintiff failed to wait 180 days from filing her administrative charge.   It is

undisputed that Plaintiff filed her administrative charge on February 28, 2013 and filed her civil action on June 11, 2013, well within the 180 day waiting period.   Plaintiff's only argument is that "[w]hile that may have been true as of the date the Complaint was filed, at this point, more than 180 days has passed and this is [] no longer a[n] issue." (ECF No. 26, at 15).   Plaintiff cites no law for such a view of waiting period generally, let alone in regard to this law.   A lawsuit brought prematurely under Title VII can be excused because filing of the civil action does not terminate or even affect the administrative proceeding, thereby permitting the EEOC to continue its intended role of investigating and adjudicating claims before taking an action to the courts.   This situation permits the possibility, as in this case, that the EEOC could subsequently close its investigation and issue a right-to-sue letter, thereby curing the plaintiff's premature filing.   In the state context, however, the statute provides that "[t]he filing of a civil action . . . automatically terminates any proceeding before the Commission."   Md. Code Ann., State Gov't § 20-1013(c).   Thus, the filing of a civil action before giving the Commission 180 days to examine the administrative charge deprives the Commission of the opportunity to continue its work with no possibility to cure.   Furthermore, Rule 15(c), concerning relation back of amendments, would relate the

16

amendment back to the date of the original pleading when, as here, "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out . . . in the original pleading." Fed.R.Civ.P. 15(c)(1)(B). Plaintiff failed to satisfy all prerequisites to file a civil action under the MFEPA and Count VII of the complaint will be dismissed.

### C. Failure to State a Claim: Claims Against PGCPS

### 1. Failure to Accommodate

Plaintiff brings claims for violations of Title I of the ADA and Section 504 of the Rehabilitation Act. The standards used to evaluate claims brought under Section 504 are the same as those brought under Title I of the ADA. 29 U.S.C. § 794(d); *Doe v. Univ. of Md. Med. Sys. Corp.*, 50 F.3d 1261, 1264 n.9 (4th Cir. 1995) ("Because the language of the two statutes is substantially the same, we apply the same analysis to both."). There are "three distinct grounds for relief: (1) intentional discrimination or disparate treatment; (2) disparate impact; and (3) failure to make reasonable accommodations." *A Helping Hand, LLC v. Balt. Cnty., Md.*, 515 F.3d 356, 362 (4th Cir. 2008). Plaintiff brings claims of disparate treatment and failure to accommodate. She alleges that PGCPS failed to respond to her request for reasonable accommodation submitted in November 2011. This failure to accommodate resulted in a constructive discharge, a form of disparate treatment.

To state a claim for failure to accommodate, Plaintiff must allege facts supporting: "(1) that [s]he was an individual who had a disability within the meaning of the statute; (2) that the employer had notice of his disability; (3) that with reasonable accommodation [s]he could perform the essential functions of the position . . .; and (4) that the [employer] refused to make such accommodations." *Rhoads v. FDIC*, 257 F.3d 373, 387 n.11 (4th Cir. 2001). "Implicit in the fourth element is the ADA requirement that the employer and employee engage in an interactive process to identify a reasonable accommodation." *Haneke v. Mid-Atl. Capital Mgmt.*, 131 F.App'x 399, 400 (4th Cir. 2005) (*citing* 29 C.F.R. § 1630.2(o)(3)).

PGCPS does not dispute that Plaintiff had a disability and that it had notice of the disability. It disputes Plaintiff's allegation that she could perform the essential functions of her job with a reasonable accommodation and whether she was already being accommodated reasonably.

Plaintiff bears the burden of establishing her ability to perform the essential functions of her job with a reasonable accommodation. *Tyndall v. Nat'l Educ. Ctrs., Inc.*, 31 F.3d 209, 213 (4th Cir. 1994). "Reasonable accommodations" are "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified

individual with a disability to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(1)(ii); *see also* 42 U.S.C. § 12111(9). "In order to be reasonable, the accommodation must be effective (i.e., it must address the job-related difficulties presented by the employee's disability), and it must allow the employee to attain an 'equal' level of achievement, opportunity, and participation that a non-disabled individual in the same position would be able to achieve." *Fleetwood v. Harford Sys. Inc.*, 380 F.Supp.2d 688, 699 (D.Md. 2005). Plaintiff's complaint alleges that she was unable physically to restrain large students herself, but could perform this function of the job with a reasonable accommodation, namely an "intervention partner." PGCPS had previously provided such an intervention partner to Plaintiff, but took away the partner following the November 7, 2011 incident and never responded to Plaintiff's formal request for accommodation. Plaintiff alleges that she could perform all the activities of her job, save for physically restraining large students without assistance.

PGCPS, in opposition, refers to Plaintiff's Form A.P. 4172 where she states that she can no longer engage in prolonged standing and the official job description for her position that states that the employee is frequently required to stand. According to PGCPS, this illustrated that Plaintiff could not

perform the essential functions of the job and is therefore not a qualified individual.

This argument will be rejected for two reasons. First, on a motion to dismiss, "as a general rule extrinsic evidence should not be considered." *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2002). Although there is an exception when the plaintiff has notice of the evidence, does not dispute its authenticity, and relies on it in framing the complaint, the exception does not apply. Plaintiff did not rely on the job description in framing her complaint.[8] Second, PGCPS seems to ignore that a "qualified individual" is one who can perform the essential functions of her job *with a reasonable accommodation*. A.P. 4172 was a request for an allegedly reasonable accommodation and is one of the central issues of this case. At this stage of the proceedings, taking all allegations in the light most favorable to Plaintiff, she has alleged that she could perform the essential functions of her position with a reasonable accommodation.

PGCPS also argues that Plaintiff is not a "qualified individual" because she was not at work or could not attend work

---

[8] In any event, the employer – not the employee – bears the burden of proving that a given job function is an essential function. *Dahlman v. Tenenbaum*, No. DKC 10-2993, 2011 WL 3511062, at *10 (D.Md. Aug. 9, 2011). Furthermore, an employee's job description is merely one piece of evidence that may indicate whether a job function is essential. *See* 29 C.F.R. 1630.2(n)(3).

regularly.    It  submits  that  Plaintiff  was  on  approved  leave
between  the  time  her  doctor  restricted  her  ability  to  work  and
her  eventual  retirement.    Case  law  states  that  "[i]n  addition  to
possessing  the  skills  necessary  to  perform  the  job  in  question,
an  employee  must  be  willing  and  able  to  demonstrate  these  skills
by  coming  to  work  on  a  regular  basis,"  *Tyndall*,  31  F.3d  at  213,
but  the  cases  PGCPS  cites  were  all  decided  on  summary  judgment
motions,  where  the  plaintiff  has  to  produce  evidence  showing
that  there  is  a  genuine  dispute  for  trial.    That  is  not  the  case
on  a  motion  to  dismiss.    In  addition,  it  would  be  a  perverse
reading  of  disability  law  to  deny  an  employee  a  reasonable
accommodation  so  that  she  cannot  work,  and  then  turn  around  and
point  to  those  absences  as  evidence  that  she  is  not  qualified  to
perform  her  job.    Plaintiff  is  not  alleging,  as  was  the
situation  in  the  cases  PGCPS  cites,  that  even  with  a  reasonable
accommodation  she  would  have  to  miss  work  frequently,  needed  to
work  from  home,  or  requested  to  be  accommodated  by  *not*  working.
*See  Byrne  v.  Avon  Prods.,  Inc.*,  328  F.3d  379,  380–81  (7th  Cir.
2003)  (plaintiff  requested  accommodation  by  being  allowed  not  to
work,  but  not  working  is  not  a  means  to  perform  the  job's
essential  functions);  *Halperin  v.  Abacus  Tech.  Corp.*,  128  F.3d
191,  198  (4th  Cir.  1997)  (plaintiff's  back  injury  kept  him  from
working  for  five  months);  *Carr  v.  Reno*,  23  F.3d  525,  530  (D.C.
Cir.  1994)  (employee's  attendance  was  so  erratic  as  to  make  her

unqualified for any position); *Lane v. Prince George's Cnty. Public Schools*, No. 11-cv-2088-RWT, 2013 WL 4541642, at *4 (D.Md. Aug. 26, 2013) (employee not a "qualified individual with a disability" when she was not released to work by her doctor).

PGCPS's final argument as to whether Plaintiff is a qualified individual points to Plaintiff's apparent application for, and receipt of, Ordinary Disability from the Maryland State Retirement and Pension System.  According to PGCPS, to receive Ordinary Disability, one must show that she is "totally and permanently physically or mentally incapacitated for the further performance of the normal duties of [her] position." Consequently, approval for Ordinary Disability necessarily includes the employee representing that she can no longer perform her job.  This argument will be rejected for multiple reasons.  First, it is an argument made beyond the four corners of Plaintiff's complaint.  Second, the definition quoted makes no mention of whether a reasonable accommodation would make it possible to perform the essential functions of the job.  PGCPS does not cite to a case holding that a person who is approved for Ordinary Disability is *ipso facto* not qualified to perform the essential functions of the job with or without a reasonable accommodation.  Plaintiff has sufficiently pled that she is a qualified individual with a disability.

PGCPS also contends that Plaintiff has failed sufficiently to plead the fourth prong of a failure to accommodate claim: that PGCPS refused to make such accommodations.  It argues that Plaintiff's own complaint states that she had been accommodated by the provision of an intervention partner, but never states that it was removed.  According to PGCPS, what Plaintiff is really complaining about is that PGCPS did not provide her with the specific accommodation she desired: a transfer to another position.

PGCPS's position will be rejected.  Plaintiff acknowledges in her opposition that up to November 7, 2011, PGCPS was accommodating her by bringing students to her instead of her going to the students' classrooms, and providing her an intervention partner should a large student need restraining. But contrary to PGCPS's assertion, Plaintiff's complaint does allege that Defendant took away the accommodation in the form of an intervention partner.  (ECF No. 21 ¶ 81).  While PGCPS is correct that "the ADA does not require an employer to provide the specific accommodation requested . . ., or even to provide the best accommodation," the employer must provide some reasonable accommodation.  *Scott v. Montgomery Cnty. Gov't*, 164 F.Supp.2d 502, 508-09 (D.Md. 2001).  Plaintiff alleges that PGCPS refused to engage in the interactive process to identify and provide a reasonable accommodation, such as the

23

reinstatement of an intervention partner or transfer to a Crisis Intervention Specialist position that did not require physical restraining.   This refusal can constitute a failure to accommodate.   *See Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 347 (4th Cir. 2013) ("liability for failure to engage in an interactive process depends on a finding that, had a good faith interactive process occurred, the parties could have found a reasonable accommodation that would enable the disabled person to perform the job's essential functions.").   Consequently, Plaintiff's claims of failure to accommodate under the ADA and the Rehabilitation Act can proceed, although the claim under the ADA is subject to the timeliness restriction discussed in the prior section.

## 2. Constructive Discharge

Plaintiff also claims that she was constructively discharged by PGCPS by failing to accommodate her disability in violation of the ADA, Rehabilitation Act, County Code, and common law.

PGCPS argues that Plaintiff cannot state a claim upon which relief can be granted for common law constructive discharge (Count I) because she has a remedy available through federal and state anti-discrimination statutes.

Abusive or wrongful discharge is an exception to the terminable at-will doctrine of employment when public policy is

24

violated but where a statutory exception to that doctrine has not already been provided. *Makovi v. Sherwin-Williams Co.*, 316 Md. 603, 614 (1989).   The Fourth Circuit has explained the rationale for this limitation: "[w]here the public policy foundation for the wrongful discharge is expressed in a statute, and that statute already contains a remedy for vindicating the public policy objectives, then judicial recognition of a wrongful discharge [tort] is considered both redundant and inappropriate."   *Owen v. Carpenters' Dist. Council*, 161 F.3d 767, 774 (4th Cir. 1998); *see also Makovi*, 316 Md. at 626 (where a statute "create[s] both the right, by way of an exception to the terminable at-will doctrine, and remedies for enforcing that exception . . . the generally accepted reason for recognizing the tort, that of vindicating an otherwise civilly unremedied public policy violation, does not apply").   Here, Plaintiff's complaint identifies no mandate of public policy that PGCPS allegedly violated aside from her claims of discrimination on the basis of disability.   Furthermore, Plaintiff fails to respond to PGCPS's arguments in her opposition, thereby abandoning the claim. *See Ferdinand-Davenport v. Children's Guild*, 742 F.Supp.2d 772, 777 (D.Md. 2010) ("By her failure to respond to [defendant's] argument" in a motion to dismiss, "the plaintiff abandons her claim.").   As a result, Plaintiff has not

stated a claim for wrongful discharge under Maryland common law and it will be dismissed.

To establish a cause of action for disparate treatment under the Rehabilitation Act, a plaintiff must show: (1) that she has a disability; (2) that she is otherwise qualified for the employment or benefit in question; and (3) that she was excluded from the employment or benefit due to discrimination solely on the basis of disability. *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 498 (4th Cir. 2005). The Fourth Circuit has concluded that "employment discrimination laws require as an absolute precondition to suit that some adverse employment action have occurred." *Bristow v. Daily Press, Inc.*, 770 F.3d 1251, 1255 (4th Cir. 1985). A constructive discharge is a form of an adverse employment action. *Boone v. Goldin*, 178 F.3d 253, 255-56 (4th Cir. 1999), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006), and is the component of Plaintiff's claim that PGCPS takes issue with. [9]

"In this circuit, the standard for constructive discharge requires a plaintiff to show both intolerable working conditions

---

[9] The relevant sections of the Prince George's County Code are interpreted as analogous to the ADA. *See Mabry v. Capital One, N.A.*, No. 8:13-cv-02059-AW, 2013 WL 6410983, at *3 (D.Md. Dec. 6, 2013); *Bryan v. Prince George's Cnty., Md.*, No. DKC 10-2452, 2011 WL 2650759, at *8 (D.Md. July 5, 2011).

and a deliberate effort by the employer to force the employee to quit." *Johnson v. Shalala,* 991 F.2d 126, 131 (4th Cir. 1993).

> "Intolerability" is not established by showing merely that a reasonable person, confronted with the same choices as the employee, would have viewed resignation as the wisest or best decision, or even that the employee subjectively felt compelled to resign; presumably every resignation occurs because the employee believes that it is in his best interest to resign. Rather "[i]ntolerability . . . is assessed by the objective standard of whether a 'reasonable person' in the employee's position would have felt *compelled* to resign," *Bristow*, 770 F.2d at 1255 (emphasis added) — that is, whether he would have had *no choice* but to resign.

*Blistein v. St. John's Coll.,* 74 F.3d 1459, 1468 (4th Cir. 1996), *overruled on other grounds by Oubre v. Entergy Operations, Inc.,* 522 U.S. 422 (1998) (emphasis in original).

Deliberateness can be shown "by actual evidence of intent by the employer to drive the employee from the job, or circumstantial evidence of such intent, including a series of actions that single out a plaintiff for differential treatment. *Johnson*, 991 F.2d at 131 (stating that the "fact that employees were treated identically rebuts any inference" of constructive discharge) (*citing Johnson v. Bunny Bread Co.,* 646 F.2d 1250, 1256 (8th Cir. 1981)).

In her complaint, Plaintiff alleges that PGCPS never responded to her submission of A.P. 4172 seeking a reasonable

accommodation or ever engaged in the interactive process demanded by the law. (ECF No. 21 ¶¶ 25-27, 30-34). PGCPS argues that, even assuming Plaintiff is a qualified individual, it provided Plaintiff with an accommodation. It did not drive Plaintiff out, as it was Plaintiff's voluntary decision to seek retirement when she did because of the notification she received from the state retirement board that she qualified for disability retirement and had 120 days to elect to do so. Furthermore, her work conditions were not intolerable. She was provided an accommodation and was only restricted from working by her doctor's decision, not PGCPS.

"Because the claim of constructive discharge is so open to abuse by those who leave employment of their own accord, this Circuit has insisted that it be carefully cabined." *Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 187 (4th Cir. 2004). But the "traditional standard of constructive discharge . . . does not neatly translate to the context of the Rehabilitation Act. . . . [T]he Rehabilitation Act demands more of [employers] than simple equality of treatment — the [employer] must affirmatively take steps to accommodate employees with handicaps, unless accommodation would impose undue hardship." *Johnson*, 991 F.2d at 131. In *Johnson*, the Fourth Circuit considered the district court's decision that the employer's failure to accommodate affirmatively the employee's known

disability constituted a constructive discharge.  The Fourth Circuit reversed, rejecting such a sweeping standard: "rather than cabining the doctrine of constructive discharge, the standard adopted by the district court threatens to convert every failure to accommodate under the Rehabilitation Act into a potential claim for constructive discharge." *Id.*  Thus, to prevail, a plaintiff must show more than mere failure to accommodate; she "must present some evidence that the employer intentionally sought to drive her from her position." *Id.* at 132.  In *Johnson* – at the summary judgment stage – the court found that the employer fully complied with the employee's accommodation requests in some instances, and at least partially complied with others.  Her supervisors' "lack of flexibility or magnanimity" did not demonstrate a deliberate intent to force an employee from her job.  *Id.*  Critically for this case, however, the Fourth Circuit went on to caution that this holding is not sweeping:  "[w]e recognize that a complete failure to accommodate, in the face of repeated requests, might suffice as evidence to show the deliberateness necessary for constructive discharge." *Id.*  Contrary to PGCPS's arguments, Plaintiff alleges that her accommodation was taken from her, she requested a reasonable accommodation, and was totally rebuffed.  *See Crabill v. Charlotte Mecklenburg Bd. of Educ.*, 423 F.App'x 314, 324 (4th Cir. 2011) (reasonable jury could conclude that

employer's refusal to transfer employee as an accommodation proximately prompted her early retirement); *Overstreet v. Calvert Cnty. Health Dep't*, 187 F.Supp.2d 567, 573 (D.Md. 2002) (if employer "permanently stripped plaintiff of her duties, yet allowed her to remain on the payroll, it is conceivable that the prerequisites to a constructive discharge would have been met.") The decision to seek disability retirement may have been made by Plaintiff, but it could very well have been driven by PGCPS's alleged refusal to work with Plaintiff to discover a reasonable accommodation that would allow her to perform the essential functions of her job.   At this preliminary stage in the litigation, these allegations are sufficient to deny the motion to dismiss for failure to state a claim of constructive discharge.

### D.   Failure to State a Claim: Claims Against PGCEA

Plaintiff brings three claims against PGCEA: breach of contract (Count II), negligent misrepresentation (Count III), and civil conspiracy with PGCPS, which is brought against both Defendants (Count IV).   PGCEA moved to dismiss all of these claims.[10]

A union member's action against her union for breach of duty of fair representation arises under state law as a breach-

---

[10] PGCPS also moved to dismiss the civil conspiracy claim.

of-contract claim. *Stanley v. Am. Fed'n of State and Mun. Emps. Local No. 553*, 165 Md.App. 1, 14-15 (2005).

> The duty of fair representation has three requirements. It requires a union "[1] to serve the interests of all members without hostility or discrimination toward any, [2] to exercise its discretion with complete good faith and honesty, and [3] to avoid arbitrary conduct." *Vaca* [*v. Sipes*], 386 U.S. [171,] 177 [(1967); *accord Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 44 (1998). "'Each of these requirements represents a distinct and separate obligation, the breach of which may constitute the basis for civil action.'" *Neal v. Potomac Edison Co.*, 48 Md.App. 353, 358, 427 A.2d 1033 (citation omitted), *cert. denied,* 290 Md. 719 (1981).

*Stanley*, 165 Md.App. at 15. Plaintiff alleges that she has been a dues paying member of PGCEA since her employment with PGCPS commenced in 1993. On December 16, 2011, she contacted Mr. Miller, her union representative, in order to obtain information about a possible workplace accommodation or alternative job arrangements. She sent multiple emails to Mr. Miller between then and December 12, 2012, the last of which specifically requested that he inquire as to an accommodation. Mr. Miller, however, informed her that it was PGCEA's position that PGCPS was not required to accommodate her disability and that she should plan to retire. She alleges that she has suffered from PGCEA's lack of representation and misrepresentations. Plaintiff does not make clear whether her claim of a breach of

the duty of fair representation is grounded in arbitrariness, discrimination, or bad faith, or a combination of these bases. PGCEA argues that Plaintiff has failed to plead facts that would establish or permit the inference that it failed to comply with these duties.

Plaintiff has failed to allege facts that permit an inference that PGCEA violated its duty of fair representation. Plaintiff's allegations are that PGCEA was wrong in its position that PGCPS did not have to accommodate her and that she should move toward retirement. These allegations, even taking them in the light most favorable to Plaintiff, go no further than alleging that PGCEA had a different view of Plaintiff's entitlement to an accommodation than Plaintiff, not that they were hostile to Plaintiff, gave this advice in bad faith, or were acting arbitrarily. Accordingly, Count II will be dismissed.

Plaintiff's second count against PGCEA is for negligent misrepresentation. Under Maryland law, to assert a claim of negligent misrepresentation, a plaintiff must show that:

> (1) the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement; (2) the defendant intends that his statement will be acted upon by the plaintiff; (3) the defendant has knowledge that the plaintiff will probably rely on the statement, which, if erroneous, will cause loss or injury; (4) the plaintiff, justifiably, takes action in reliance on the

```
          statement; and (5) the plaintiff suffers
          damage proximately caused by the defendant's
          negligence.
```

*Martens Chevrolet, Inc. v. Seney*, 292 Md. 328, 337 (1982).

Plaintiff alleges that PGCEA had a duty of care to Plaintiff to transmit accurate information.   The statements by Mr. Miller, PGCEA's agent, that there was no reasonable accommodation or alteration of her current position that should or could be requested from PGCPS, were false because there were then-available jobs within PGCPS for Crisis Intervention Specialists that did not require physical restraining.   The statements were made negligently because a basic search of PGCPS's job listings would have discovered these positions.   Plaintiff goes on to allege that Mr. Miller's statements were made with the intention of having Plaintiff act and rely on them, and knew that Plaintiff would probably rely on them which would cause her injury.   Plaintiff's actions of not requesting an accommodation and then being forced into early retirement were accomplished in reliance on Mr. Miller's statements, which caused her damage.

PGCEA, in its opposition, first argues that Plaintiff was accommodated.   As noted above, however, Plaintiff alleges otherwise and her allegations must be accepted as true at this time.   PGCEA next argues that its duties to Plaintiff are dictated by law and the collective bargaining agreement, neither of which provides a basis for Plaintiff's expectation of a duty

to assist Plaintiff's job search. This argument is mischaracterizes Plaintiff's request. She was not asking for help finding a new job, but for help exploring possible accommodations she and her union could present to PGCPS. Reassignment to a vacant position can be a reasonable accommodation. 42 U.S.C. § 12111(9)(B). Plaintiff has pled sufficiently a claim of negligent misrepresentation.

Finally, Plaintiff brings a claim for civil conspiracy against both Defendants (Count IV). "Civil conspiracy is a combination of two or more persons by an agreement or understanding to accomplish an unlawful act or to use unlawful means to accomplish an unlawful act not in itself illegal, with the further requirement that the act or means employed must result in damages to the plaintiff." *Shenker v. Laureate Educ., Inc.*, 411 Md. 317, 351-52 (2009). Plaintiff's only allegation is that "PGCPS and PGCEA worked together to deny Plaintiff a reasonable accommodation and ensure that Plaintiff's only option was early retirement." (ECF No. 21 ¶ 75). Such a conclusory allegation is insufficient to state a plausible claim and this count of Plaintiff's complaint will be dismissed.

**IV.   Conclusion**

For the foregoing reasons, Defendants' motions to dismiss will be granted in part and denied in part.  A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge